**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| SIMPSON PERFORMANCE PRODUCTS, INC. and SFI FOUNDATION, INC.<br>    Plaintiffs,<br><br>    v.<br><br>ROBERT WAGONER and<br>DEREK RANDALL CATHCART<br>    Defendants. | **COMPLAINT**<br>**Jury Trial Demanded**<br>**Civil Case No. 5:15CV26** |

SIMPSON PERFORMANCE PRODUCTS, INC. ("SIMPSON") and SFI FOUNDATION, INC. ("SFI"), each individually referred to herein as Plaintiff and together collectively referred to herein as Plaintiffs, by and through their respective undersigned counsel, complains of ROBERT WAGONER ("WAGONER") and DEREK RANDALL CATHCART ("CATHCART"), each individually referred to herein as Defendant and together collectively referred to herein as Defendants, and for its Complaint states, asserts and alleges as follows.

## THE PARTIES

1.      Plaintiff SIMPSON is a corporation organized and existing under the laws of the State of Texas having a principal place of business and its registered office at 185 Rolling Hills Road, Mooresville, North Carolina, 28115.

2.      Plaintiff SFI is a non-profit 501(C)(6) corporation organized and existing under the laws of the State of California and having a principle place of business at 15708 Pomerado Road, Suite N208, Poway, California, 92064.  Founded in 1985, SFI was established to develop and administer minimum performance standards for the automotive aftermarket and motorsports industries, including standards for specialty/performance racing equipment.

3.      Upon information and belief, Defendant WAGONER is an individual residing at 301 Dahlke Street, North Judson, Indiana, 46366.  Defendant WAGONER has been engaging in, and is believed to continue to be engaging in, the business of providing specialty/performance racing equipment, including the counterfeit head and neck restraint that is the subject of this Complaint, within the State of North Carolina, and specifically, within this judicial district.

4.      Upon information and belief, Defendant CATHCART is an individual residing at 735 Heritage Road, Valparaiso, Indiana, 46385.  Defendant CATHCART has been engaging in, and is believed to continue to be engaging in, the business of providing specialty/performance racing equipment, including the counterfeit head and neck restraint that is the subject of this Complaint, within the State of North Carolina, and specifically, within this judicial district.

## JURISDICTION AND VENUE

5.      This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125.  This is also an action for patent infringement arising under the patent laws of the United States, and in particular, 35 U.S.C. § 271.

6.      This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action involving a federal question arising under the laws of the United States.

7.      This Court further has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1338(a), in that this civil action arises under Acts of Congress relating to trademarks and patents, and as to the Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

8.      This Court has supplemental jurisdiction over the subject matter of the claims under North Carolina State law pursuant to 28 U.S.C. § 1367(a), in that those claims are so related to the federal claims under the trademark laws of the United States that they form part of the same case or controversy.

9.      This Court has personal jurisdiction over each Defendant because the claims stated herein arise, at least in part, from activities that each Defendant has conducted in the State of North Carolina and in this judicial district, such that each Defendant can reasonably expect to be haled before this Court to account for those acts.

10.     This Court also has personal jurisdiction over each Defendant in this judicial district, consistent with the principles of due process and the North Carolina Long-Arm Statute N.C. Gen. Stat. § 1-75.4(1)(d), because, upon information and belief, each Defendant is engaged in substantial activity within the State of North Carolina and has derived substantial commercial benefit from goods sold within the State of North Carolina. Furthermore, each Defendant has transacted business in this judicial district, has committed acts of trademark and patent infringement in this judicial district, and has

placed infringing products into the stream of commerce through established channels of trade with the expectation and knowledge that such products will be purchased by residents of this judicial district.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because, upon information and belief, a substantial part of the events or omissions giving rise to the claims of this Complaint occurred in this judicial district. Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b)(3) because each Defendant is subject to personal jurisdiction in this judicial district with respect to the claims of this Complaint. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b) because each Defendant is subject to personal jurisdiction under the North Carolina Long-Arm Statute N.C. Gen. Stat. § 1-75.4(1)(d).

## BACKGROUND FACTS

12.     Plaintiff SIMPSON is a leading manufacturer of automotive and motorsports specialty/performance products, including head and neck restraints for competitive racing. SIMPSON is headquartered in New Braunfels, Texas, and has a large customer service and sales team located in Mooresville, North Carolina that services National Association for Stock Car Auto Racing (NASCAR) customers in the heart of NASCAR country. The SIMPSON® brand of automotive and motorsports products has been well known and respected since 1959 for high quality, performance, durability and safety.

13.     In December, 2010, Plaintiff SIMPSON acquired Safety Solution, Inc., d/b/a Safety Solutions, Inc., the manufacturer of HUTCHENS Hybrid PRO™ head and neck restraints. In September, 2011, NASCAR approved the SIMPSON® Hybrid PRO Rage™ head and neck restraint for use in NASCAR competition. In January, 2012, the

SIMPSON® Hybrid PRO Rage™ head and neck restraint was approved by the International Automobile Federation (FIA).  Sometime during 2012, SIMPSON started using the SIMPSON® Hybrid PRO Rage™ label in place of the HUTCHENS Hybrid PRO™ label.

14.    Plaintiff SFI is a non-profit organization established in 1978 to issue and to administer standards for the quality assurance of specialty/performance products and racing equipment.  NASCAR is one of the sanctioning body members of SFI that utilizes SFI Specifications within its rulebook and SFI minimum standards of performance for motorsports products, including safety products, such as head and neck restraints, required for NASCAR competitions.  In particular, NASCAR competitors must use head and neck restraints that are certified as being manufactured in compliance with SFI Specification 38.1 (SFI SPEC 38.1).  *See,* Exhibit 1: SFI SPECIFICATION 38.1; EFFECTIVE: SEPTEMBER 23, 2011; PRODUCT: Head and Neck Restraint Systems, submitted herewith.

15.    The SIMPSON® Hybrid PRO Rage™ head and neck restraint is one of only a few head and neck restraints to be certified under SFI SPEC 38.1 for use in NASCAR competitions.

16.    Upon information and belief, Defendant WAGONER has offered for sale, and is continuing to offer for sale, head and neck restraints through the Internet website www.ebay.com.  The head and neck restraints offered for sale by WAGONER bear the SIMPSON® federally registered trademark and the HUTCHENS Hybrid PRO™ and Hybrid PRO™ common law trademarks belonging to Plaintiff SIMPSON.  The head and neck restraints offered for sale by WAGONER also bear the federally registered

trademark depicted in U.S. Trademark Registration No. 4,117,821 (*see* Exhibit 12) belonging to Plaintiff SFI and featured on an SFI SPEC 38.1 certification label.

17.     The head and neck restraints offered for sale by Defendant WAGONER bearing the Plaintiffs' trademarks are not genuine head and neck restraints manufactured by Plaintiff SIMPSON and are not lawfully manufactured by WAGONER or any third party under license from SIMPSON.  Furthermore, the head and neck restraints offered for sale by WAGONER are <u>not</u> certified by SIMPSON as meeting the stringent performance and safety requirements of SFI SPEC 38.1, and thus, falsely bear an SFI SPEC 38.1 certification label.  As such, the HUTCHENS Hybrid PRO™ head and neck restraint bearing an SFI SPEC 38.1 certification label offered for sale by Defendant WAGONER is a counterfeit good (referred to herein as a "Counterfeit Head and Neck Restraint").

18.     Upon information and belief, an individual named George Marsh purchased a Counterfeit Head and Neck Restraint from a Seller ID "thebulbman69" through the Internet website www.ebay.com.  *See,* Exhibit 2: Declaration of Marissa K. Johnson, submitted herewith, at ¶7.  Believing the head and neck restraint originated with Plaintiff SIMPSON, the item was taken to an authorized SIMPSON® products dealer with a complaint of a manufacturing defect relating to a chest strap that was sewn in a twisted manner, and the authorized SIMPSON dealer forwarded the defective head and neck restraint to SIMPSON at its Mooresville, North Carolina location.  Exhibit 2 ¶4.  After initial inspection, SIMPSON notified the dealer that the head and neck restraint appeared to be modified with tethers and a stitching pattern that was inferior to the tethers and stitching pattern utilized on a genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint, *see,* Exhibit 2 ¶5, and thus, the defective head and neck restraint created a potentially

unsafe condition.  SIMPSON retained the defective and unsafe Counterfeit Head and Neck Restraint, and offered the purchaser a discounted price on a replacement genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint.

19.   Upon information and belief, an individual named James Gardener obtained a Counterfeit Head and Neck Restraint that was purchased through the Internet website www.ebay.com.  Believing the item originated with Plaintiff SIMPSON, the individual sent the head and neck restraint to SIMPSON at its Mooresville, North Carolina location and requested SIMPSON to re-size the strapping and to recertify the head and neck restraint as meeting SFI SPEC 38.1.  Exhibit 2 ¶6.  SIMPSON determined the head and neck restraint was not a genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint, and therefore, retained the potentially unsafe Counterfeit Head and Neck Restraint for further inspection and evaluation.

20.   Marissa K. Johnson, an employee of Plaintiff SIMPSON in the capacity of Operations Manager, purchased a Counterfeit Head and Neck Restraint from a Seller ID "thebulbman69" through the Internet website www.ebay.com.  Exhibit 2 ¶9-13.  The Counterfeit Head and Neck Restraint purchased by Ms. Johnson was delivered to a residential address in Mooresville, North Carolina.  Exhibit 2 ¶14.  The PayPal Transaction Details report lists Payment To: robert wagoner; Seller's ID: thebulbman69; and Ship From: robert wagoner, 301 e dahlke st., north judson, IN 46366.  *See,* Exhibit 3: PayPal Transaction Details, submitted herewith.

21.   On or about January 21, 2015, the Counterfeit Head and Neck Restraint was given to Trevor P. Ashline, an employee of Plaintiff  SIMPSON in the capacity of Vice President of Engineering and Product Development, to be compared to a genuine SIMPSON®

Hybrid PRO Rage™ head and neck restraint.  Exhibit 2 ¶16.  In particular, the Counterfeit Head and Neck Restraint was examined to confirm that it was manufactured using tooling, materials and parts that are different than the tooling, materials and parts used to manufacture a genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint.

22.     Mr. Ashline confirmed that the Counterfeit Head and Neck Restraint purchased by Ms. Johnson, as well as the two head and neck restraints sent to SIMPSON, is manufactured from tooling, materials and parts that are not the same as the tooling, materials and parts used to produce a genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint manufactured by Plaintiff SIMPSON or a genuine HUTCHENS Hybrid PRO™ previously manufactured by the predecessor company Safety Solution, Inc.  *See*, Exhibit 4: Declaration of Trevor P. Ashline, submitted herewith, at ¶20.

23.     For example, the Counterfeit Head and Neck Restraints exhibit tooling ejector pin marks having different sizes and locations than the genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint.  The tooling split lines on the shoulders of the Counterfeit Head and Neck Restraints have a different shape and location than the tooling split lines on the genuine, head and neck restraint.  Other tooling marks and tooling pin holes on the Counterfeit Head and Neck Restraints have different sizes and locations than those on the genuine head and neck restraint.  Several of the parts and materials used to manufacture the Counterfeit Head and Neck Restraints are different than the parts and materials used to produce the genuine head and neck restraint.  In particular, the material of the helmet tethers on the Counterfeit Head and Neck Restraints is a solid nylon or polyester material, while the material of the helmet tethers on the genuine head and neck restraint is Kevlar® wrapped in polyester, which is stronger and does not burn completely through.  The

yellow quick-release pull on the genuine SIMPSON® Hybrid PRO Rage™ head and

neck restraint is made of non-flammable Nomex® material, while the quick-release pull

on the Counterfeit Head and Neck Restraints is made of a flammable nylon material.

Furthermore, the tie plates that secure the webbing, the helmet D-rings and nuts, and the

chest strap buckle on the Counterfeit Head and Neck Restraints are different parts than

those utilized on the genuine head and neck restraint.  Finally, the SFI SPEC 38.1

certification label on the Counterfeit Head and Neck Restraints is not the same as the

certification label provided to SIMPSON by SFI for certifying that the genuine

SIMPSON® Hybrid PRO Rage™ head and neck restraint meets SFI SPEC 38.1.  Exhibit

4 ¶21; Exhibit 4, Attachment A.

24.     Upon information and belief, Defendant CATHCART has offered for sale, and is

continuing to offer for sale, head and neck restraints through the Internet website

www.racingjunk.com.  The head and neck restraints offered for sale by CATHCART

bear the SIMPSON® federally registered trademark and the HUTCHENS Hybrid PRO™

common law trademark belonging to Plaintiff SIMPSON.  The head and neck restraints

offered for sale by CATHCART also bear the federally registered trademark depicted in

U.S. Trademark Registration No. 4,117,821 (*see* Exhibit 12) belonging to Plaintiff SFI

featured on an SFI SPEC 38.1 certification label.

25.     The head and neck restraints offered for sale by Defendant CATHCART bearing the

Plaintiffs' trademarks are not genuine head and neck restraints manufactured by Plaintiff

SIMPSON and are not lawfully manufactured by CATHCART or any third party under

license from SIMPSON.  Furthermore, the head and neck restraints offered for sale by

CATHCART are not certified by SIMPSON as meeting the stringent performance and

safety requirements of SFI SPEC 38.1, and thus, falsely bear an SFI SPEC 38.1

certification label.  As such, the HUTCHENS Hybrid PRO™ head and neck restraint

bearing an SFI SPEC 38.1 certification label offered for sale by Defendant CATHCART

is a counterfeit good (referred to herein as a "Counterfeit Head and Neck Restraint").

26.     On or about February 5, 2-15, Ms. Johnson arranged for a SIMPSON employee to

purchase a Counterfeit Head and Neck Restraint being offered for sale on the Internet

website www.racingjunk.com.  Exhibit 2 ¶18.  The Counterfeit Head and Neck Restraint

was purchased from a listing posted on January 2, 2015, by Seller ID "crcdude9" titled:

Simpson Hybrid Pro – Large, and stating: "I have a lightly used Simpson Hybrid Pro for

sale, it has [sic: an] 2013 SFI tag and is in excellent condition."  *See*, Exhibit 5:

RacingJunk Ad # 182353668 Simpson Hybrid Pro Excellent Condition for Sale in

VALPARAISO, IN, submitted herewith.

27.     The SIMPSON employee contacted the seller by a telephone number having a northern

Indiana area code provided in the ad and agreed to purchase the used HUTCHENS

Hybrid PRO™ head and neck restraint for $350.00 with delivery to Mooresville, North

Carolina.  Exhibit 2 ¶19.  The seller identified himself as "Randy" and requested payment

be made by PayPal. *Id*.

28.     On or about February 9, 2015, the Counterfeit Head and Neck Restraint purchased from

"crcdude9" was delivered to Mooresville, North Carolina, 21, 2015, with a return

address: Lightbright, 735 Heritage Road, Valparaiso, IN, 46385.  Exhibit 2 ¶20.

Investigation of the telephone number provided in the www.racingjunk.com ad listed the

name "Derek R. Cathcart" having the same address as the return address for the

Counterfeit Head and Neck Restraint purchased from "crcdude9."  Further investigation

of the telephone number and the address identified "CRC Cathcart Racing" as also being

listed at the same address. Exhibit 2 ¶21. Upon information and belief, "Derek R.

Cathcart" is the also known as Derek Randall Cathcart and has an alias name "Randy."

*See, Id.*

29. The head and neck restraint purchased from "crcdude9" was given to Mr. Ashline for

examination to determine whether it was also a Counterfeit Head and Neck Restraint

having the HUTCHENS Hybrid PRO™ label previously used by predecessor Safety

Solution, Inc. Exhibit 2 ¶22.

30. On or about February 9. 2015, Mr. Ashline completed his examination and concluded

that the head and neck restraint purchased from "crcdude9" exhibited the same significant

differences as compared to a genuine SIMPSON® Hybrid PRO Rage™ head and neck

restraint as the Counterfeit Head and Neck restraint purchased from "thebulbman69."

Exhibit 4 ¶28.

31. In particular, Mr. Ashline determined that each of the Counterfeit Head and Neck

Restraints i) **COULD NOT** have been produced from the same tooling as the genuine

SIMPSON® Hybrid PRO Rage™ head and neck restraint; ii) **WAS NOT** manufactured

by SIMPSON or Safety Solution, Inc.; and iii) as a result **IS NOT** a genuine SIMPSON®

Hybrid PRO Rage™ head and neck restraint manufactured by SIMPSON **OR** a genuine

HUTCHENS Hybrid PRO ™ head and neck restraint manufactured by predecessor

Safety Solution, Inc that has been modified and/or refurbished.

32. On or about February 4, 2015, Ms. Johnson sent the Counterfeit Head and Neck Restraint

that she purchased and that Mr. Ashline examined to Michael Hurst, Technical Manager

for Plaintiff SFI. Exhibit 2 ¶17. Mr. Hurst examined the SFI SPEC 38.1 certification

label affixed to the Counterfeit Head and Neck Restraint and found a number of notable differences compared to a genuine SFI SPEC 38.1 certification label.  As a result, Mr. Hurst concluded that the SFI SPEC 38.1 certification label affixed to the Counterfeit Head and Neck Restraint purchased by Ms. Johnson from "thebulbman69" **IS NOT** a genuine SFI SPEC 38.1 certification label provided by Plaintiff SFI.  *See* Exhibit 6: Declaration of Michael Hurst, submitted herewith, at ¶12-15.

33.     On February 5, 2015, SIMPSON posted a Safety Bulletin on its Internet website www.simpsonraceproducts.com.  *See,* Exhibit 7: SIMPSON Safety Bulletin, February 5, 2015.  The Safety Bulletin warns motorsports competitors of the Counterfeit Head and Neck Restraints having the HUTCHENS Hybrid PRO™ label and the SFI SPEC 38.1 certification label.  Since the Safety Bulletin was posted, SIMPSON has received numerous telephone inquiries relating to the counterfeit head and neck restraints and has received delivery of several head and neck restraints confirmed as being counterfeit, and thus, potentially unsafe.  Exhibit 2 ¶23; Exhibit 4 ¶24.  Since February 5, 2015, SIMPSON has taken additional steps to warn motorsports competitors of the Counterfeit Head and Neck Restraints and the safety concerns relating to their use, including notifying technical officials at motorsports racing events and advising motorsports competitors attending a racing event to present a suspected counterfeit device to technical officials for inspection by a trained inspector.  Exhibit 4 ¶25.

## **THE TRADEMARK RIGHTS OF THE PLAINTIFFS**

34.     Plaintiff SIMPSON is the owner by assignment of U.S. Trademark Registration No. 1,243,427 for the composite (*i.e.*, word and design) trademark SIMPSON and Design registered, *inter alia*, in International Class 012 for use on or in connection with, *inter*

*alia,* driver restraint harnesses, neck support yokes and harness pads, and webbing belts for harnesses, reproduced below.



*See*, Exhibit 8: U.S. Trademark Registration No. 1,243,427, submitted herewith.

35.     Plaintiff SIMPSON is also the owner by assignment of U.S. Trademark Registration No. 3,026,333 for the composite (*i.e.*, word and design) trademark SIMPSON and Design registered, *inter alia*, in International Class 012 for use on or in connection with, *inter alia,* driver restraint harnesses, neck support yokes and harness pads, and webbing belts for harnesses, reproduced below, wherein the color red is claimed as a feature of the mark.



*See*, Exhibit 9: U.S. Trademark Registration No. 3,026,333, submitted herewith. SIMPSON's right to use the mark in commerce on or in connection with the aforementioned goods is incontestable pursuant to 15 U.S.C. §1065 of the Trademark Act.

36.     Plaintiff SIMPSON is also the owner by assignment of U.S. Trademark Registration No. 3,026,334 for the same composite (*i.e.*, word and design) trademark registered, *inter alia*, in International Class 012 for use on or in connection with the same goods, wherein color is not claimed as a feature of the mark.  *See,* Exhibit 10: U.S. Trademark Registration No.

3,026,334, submitted herewith.  SIMPSON's right to use the mark in commerce on or in connection with the aforementioned goods is incontestable pursuant to 15 U.S.C. §1065 of the Trademark Act.

37.    Plaintiff SIMPSON is also the owner by assignment of U.S. Trademark Registration No. 3,050,920, for the word trademark SIMPSON registered, *inter alia*, in International Class 012 for use on or in connection with, *inter alia,* driver restraint harnesses, neck support yokes and harness pads, and webbing belts for harnesses.  *See*, Exhibit 11: U.S. Trademark Registration No. 3,050,920, submitted herewith.  SIMPSON's right to use the mark in commerce on or in connection with the aforementioned goods is incontestable pursuant to 15 U.S.C. §1065 of the Trademark Act.

38.    The SIMPSON registered trademarks identified in the preceding paragraphs of this section (collectively referred to herein as the "SIMPSON Registered Marks") are in good standing with the U.S. Trademark Office, and there is no proceeding involving SIMPSON's rights in the marks pending in the United States Patent and Trademark Office, nor any final decision adverse to SIMPSON's claim of ownership to the marks and/or the registrations.

39.    Plaintiff SIMPSON and its assignor predecessors in interest have, for the entire time the SIMPSON Registered Marks have been federally registered, consistently provided the public, including the Defendant, with notice of its federal registrations through the display of the registered symbol "®" with its use of the federally registered trademarks.

40.    Plaintiff SIMPSON applies the SIMPSON Registered Marks to its goods in various ways, namely by placing the trademarks upon the goods themselves and by placing the

trademarks on the packaging for the goods.  Plaintiff SIMPSON also uses the SIMPSON Registered Marks in advertising for the goods in interstate commerce.

41.    Plaintiff SIMPSON is also the owner of the distinctive and protectable common law trademarks HUTCHENS Hybrid PRO™ and Hybrid PRO™ used in interstate commerce on or in connection with the same goods, namely, driver restraint harnesses (referred to herein as the "SIMPSON Common Law Marks").

42.    The aforementioned SIMPSON Common Law Marks has been in use on the goods themselves, on packaging for the goods and/or in advertising for the goods in interstate commerce continuously and substantially exclusively by Plaintiff SIMPSON since the acquisition of Safety Solution, Inc. in December, 2010, and by predecessor Safety Solution, Inc.

43.    The SIMPSON Common Law Marks has acquired secondary meaning as an indicator of Plaintiff SIMPSON as the source of origin of automotive and motor sports parts and accessories, including head and neck restraints, effectively functioning as a trademark. The SIMPSON Common Law Marks serves to distinguish HUTCHENS Hybrid PRO™ brand head and neck restraints from those of its competitors and copyists, such that persons who are even minimally frequent consumers of automotive and motor sports parts and accessories, are capable of identifying such goods, and thus, believing that those goods originated with Plaintiff SIMPSON, simply by observing the SIMPSON Common Law Marks, whether or not the SIMPSON Registered Marks are also displayed.

44.    Plaintiff SFI is the owner of U.S. Trademark Registration No. 4,117,821 for the composite (*i.e.*, word and design) service mark reproduced below registered in International Class 042 for development of voluntary standards for specialty and

performance automotive and racing equipment.  *See*, Exhibit 12: U.S. Trademark

Registration No. 4,117,821, submitted herewith.



45.     The SFI registered trademark identified in the preceding paragraph of this section

(referred to herein as the "SFI Registered Mark") is in good standing with the U.S.

Trademark Office, and there is no proceeding involving SFI's rights in the mark pending

in the United States Patent and Trademark Office, nor any final decision adverse to SFI's

claim of ownership to the mark and/or the registration.

46.     Plaintiff SFI and authorized users of its registered trademark apply the SFI Registered

Mark to goods meeting or exceeding the minimum standards developed by SFI in various

ways, namely by placing the trademark upon the goods themselves and by placing the

trademark on the packaging for the goods.  Plaintiff SFI and authorized users of its

registered trademark also uses the SFI Registered Mark in advertising for services and

goods in interstate commerce.

## THE PATENT RIGHTS OF PLAINTIFF SIMPSON

47.     Plaintiff SIMPSON is the owner by assignment of all right, title and interest in and to

U.S. Patent No. 6,931,669, duly and properly issued on August 23, 2005, to Trevor P.

Ashline (referred to herein as "the '669 Patent").  *See*, Exhibit 13: U.S. Patent No.

6,931,669, submitted herewith.  SIMPSON and its assignor predecessor in interest Safety

Dynamics, LLC. have, for the entire time since the issuance of the '669 Patent,

consistently provided the public, including the Defendant, with notice of its patent rights

by marking head and neck restraints manufactured according to the claims of the '669

Patent with the notice: PATENT NO.: 6931669; other patents pending.

48.     Plaintiff SIMPSON is also the owner by assignment of all right, title and interest in and

to U.S. Patent No. 8,272,074, duly and properly issued on September 25, 2012, to Trevor

P. Ashline (referred to herein as "the '074 Patent").  *See*, Exhibit 14: U.S. Patent No.

8,272,074, submitted herewith.

49.     The '669 Patent and the '074 Patent belonging to Plaintiff SIMPSON are collectively

referred to herein as the "SIMPSON Patents."

## THE COMMERCIAL ACTIVITIES OF THE DEFENDANTS

50.     Upon information and belief, Defendant WAGONER regularly offers goods for sale in

commerce through at least the Internet website www.ebay.com and Defendant

CATHCART regularly offers goods for sale in commerce through at least the Internet

website www.racingjunk.com

51.     The goods offered for sale by Defendant WAGONER and Defendant CATHCART each

include Counterfeit Head and Neck Restraints having a HUTCHENS Hybrid PRO™

label and an SFI SPEC 38.1 certification label, as described hereinabove.

52.     Upon information and belief, Defendant WAGONER sold a Counterfeit Head and Neck

Restraint that was taken to an authorized SIMPSON products dealer for repair of a defect,

and then sent to Plaintiff SIMPSON at its Mooresville, North Carolina location.

53.     Upon information and belief, another Counterfeit Head and Neck Restraint believed to be

sold by Defendant WAGONER was sent to Plaintiff SIMPSON at its Mooresville, North

Carolina location to be re-sized and for re-certification.

54.     In each instance, the person in possession of the Counterfeit Head and Neck Restraint was confused into believing that the head and neck restraint was a genuine SIMPSON® Hybrid PRO Rage™ head and neck restraint or a genuine HUTCHENS Hybrid PRO™ head and neck restraint that originated with Plaintiff SIMPSON or its predecessor Safety Solution, Inc.

55.     Upon information and belief, Defendant WAGONER sold a Counterfeit Head and Neck Restraint through the Internet website www.ebay.com using the Seller ID "thebulbman69" that was ordered by Marissa K. Johnson, Operations Manager for Plaintiff SIMPSON, and delivered to Mooresville, North Carolina.  The package containing the Counterfeit Head and Neck Restraint having a HUTCHENS Hybrid PRO™ label and an SFI SPEC 38.1 certification label listed the seller's name and address on the receipt as: robert wagoner, 301 e dahlke street, north judson, IN, 46366.

56.     Upon information and belief, each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant WAGONER prominently features the SIMPSON Registered Marks, the SIMPSON Common Law Marks and the SFI Registered Mark.

57.     The offering for sale of Counterfeit Head and Neck Restraints by Defendant WAGONER is likely to cause confusion among consumers as to their source or origin, and has caused actual confusion among consumers that the Counterfeit Head and Neck Restraints originate with Plaintiff SIMPSON.

58.     Upon information and belief, Defendant WAGONER likely will continue to engage in the offering for sale of unauthorized and unlicensed Counterfeit Head and Neck Restraints that infringe Plaintiff SIMPSON's rights in the SIMPSON Registered Marks

and the SIMPSON Common Law Marks, and that further infringe Plaintiff SFI's rights in the SFI Registered Mark, in violation of at least §§ 32 and 43 of the Trademark Act.

59.     Each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant WAGONER prominently features a label that falsely states "This Manufacturer Certifies That This Product Meets SFI SPEC 38.1" and indicates a false Date of Manufacture or Recertification that is later in time than 2012, when SIMPSON started using a SIMPSON® Hybrid PRO Rage™ label in place of the HUTCHENS Hybrid PRO™ label used previously by predecessor Safety Solution, Inc.

60.     Each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant WAGONER features a label that falsely states "This product designed & manufactured by Safety Solutions, Inc. PATENT NO.: 6931669; other patents pending."

61.     The false statements made on Counterfeit Head and Neck Restraints by Defendant WAGONER are likely to cause confusion among consumers as to their source or origin, and have caused actual confusion among consumers that the Counterfeit Head and Neck Restraints originate with Plaintiff SIMPSON.

62.     Upon information and belief, Defendant WAGONER likely will continue to engage in making false statements on unauthorized and unlicensed Counterfeit Head and Neck Restraints in violation of at least § 43 of the Trademark Act.

63.     Upon information and belief, the Counterfeit Head and Neck Restraints offered for sale and sold by Defendant WAGONER are of inferior quality compared to genuine SIMPSON® Hybrid PRO Rage™ and HUTCHENS Hybrid PRO™ head and neck restraints, and further, have not been tested by Plaintiff SFI or found to be in compliance with the stringent performance and safety requirements of SFI SPEC 38.1.  As a result,

the Counterfeit Head and Neck Restraints offered for sale and sold by Defendant

WAGONER are likely to diminish the goodwill that is attributed to Plaintiff SIMPSON

by the SIMPSON Registered Marks and the SIMPSON Common Law Marks, and to

diminish the goodwill that is attributed to Plaintiff SFI by the SFI Registered Mark, in

violation of at least § 43 of the Trademark Act.

64.     The making, offering for sale and selling of Counterfeit Head and Neck Restraints by

Defendant WAGONER also infringes Plaintiff SIMPSON's rights in the SIMPSON

Patents, in violation of the United States Patent Act.

65.     Upon information and belief, the Counterfeit Head and Neck Restraints  made, offered

for sale and sold by Defendant WAGONER infringe at least one valid and subsisting

claim of the '699 Patent.

66.     Upon information and belief, the Counterfeit Head and Neck Restraints  made, offered

for sale and sold by Defendant WAGONER infringe at least one valid and subsisting

claim of the '074 Patent.

67.     Upon information and belief, Defendant CATHCART sold a Counterfeit Head and Neck

Restraint through the Internet website www.racingjunk.com using the Seller ID

"crcdude9" that was ordered by a SIMPSON employee and delivered to Mooresville,

North Carolina.  The package containing the Counterfeit Head and Neck Restraint having

a HUTCHENS Hybrid PRO™ label and an SFI SPEC 38.1 certification label listed the

return address as: Lightbright, 735 Heritage Road, Valparaiso, IN, 46385.  The telephone

number of the seller is listed to "Derek R. Cathcart" and "CRC Cathcart Racing" is listed

at the same address.  Upon further information and belief, "Derek R. Cathcart" is also

known as "Derek Randall Cathcart" and has an alias name "Randy".

68.     Upon information and belief, each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant CATHCART prominently features the SIMPSON Registered Marks, the SIMPSON Common Law Marks and the SFI Registered Mark.

69.     The offering for sale of Counterfeit Head and Neck Restraints by Defendant CATHCART is likely to cause confusion among consumers as to their source or origin, and has caused actual confusion among consumers that the Counterfeit Head and Neck Restraints originate with Plaintiff SIMPSON.

70.     Upon information and belief, Defendant CATHCART likely will continue to engage in the offering for sale of unauthorized and unlicensed Counterfeit Head and Neck Restraints that infringe Plaintiff SIMPSON's rights in the SIMPSON Registered Marks and the SIMPSON Common Law Marks, and that further infringe Plaintiff SFI's rights in the SFI Registered Mark, in violation of at least §§ 32 and 43 of the Trademark Act.

71.     Each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant CATHCART prominently features a label that falsely states "This Manufacturer Certifies That This Product Meets SFI SPEC 38.1" and indicates a false Date of Manufacture or Recertification that is later in time than 2012, when SIMPSON started using a SIMPSON® Hybrid PRO Rage™ label in place of the HUTCHENS Hybrid PRO™ label used previously by predecessor Safety Solution, Inc.

72.     Each Counterfeit Head and Neck Restraint offered for sale and sold by Defendant CATHCART features a label that falsely states "This product designed & manufactured by Safety Solutions, Inc. PATENT NO.: 6931669; other patents pending."

73.     The false statements made on Counterfeit Head and Neck Restraints by Defendant CATHCART are likely to cause confusion among consumers as to their source or origin that the Counterfeit Head and Neck Restraints originate with Plaintiff SIMPSON.

74.     Upon information and belief, Defendant CATHCART likely will continue to engage in making false statements on unauthorized and unlicensed Counterfeit Head and Neck Restraints in violation of at least § 43 of the Trademark Act.

75.     Upon information and belief, the Counterfeit Head and Neck Restraints offered for sale and sold by Defendant CATHCART are of inferior quality compared to genuine SIMPSON® Hybrid PRO Rage™ and HUTCHENS Hybrid PRO™ head and neck restraints, and further, have not been tested by Plaintiff SFI or found to be in compliance with the stringent performance and safety requirements of SFI SPEC 38.1.  As a result, the Counterfeit Head and Neck Restraints offered for sale and sold by Defendant CATHCART are likely to diminish the goodwill that is attributed to Plaintiff SIMPSON by the SIMPSON Registered Marks and the SIMPSON Common Law Marks, and to diminish the goodwill that is attributed to Plaintiff SFI by the SFI Registered Mark, in violation of at least § 43 of the Trademark Act.

76.     The making, offering for sale and selling of Counterfeit Head and Neck Restraints by Defendant CATHCART also infringes Plaintiff SIMPSON's rights in the SIMPSON Patents, in violation of the United States Patent Act.

77.     Upon information and belief, the Counterfeit Head and Neck Restraints  made, offered for sale and sold by Defendant CATHCART infringe at least one valid and subsisting claim of the '699 Patent.

78.    Upon information and belief, the Counterfeit Head and Neck Restraints  made, offered

       for sale and sold by Defendant CATHCART infringe at least one valid and subsisting

       claim of the '074 Patent.

## PLAINTIFFS' FIRST CAUSE OF ACTION AND CLAIM FOR RELIEF TRADEMARK INFRINGEMENT

79.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the

       foregoing paragraphs, as though fully set forth in this cause of action.

80.    Defendants' acts and/or omissions as stated herein constitute trademark infringement in

       violation of 15 U.S.C. §1114(1)(a).

81.    As a proximate result of each Defendant's trademark infringement, Plaintiffs have each

       been damaged in an actual amount to be proven at trial.  Furthermore, upon information

       and belief, as a proximate result of said trademark infringement, each Defendant has

       unlawfully profited in an amount to be determined at trial.

82.    At all relevant times, each Defendant acted intentionally and/or willfully in using the

       SIMPSON Registered Marks and/or the SFI Registered Mark on Counterfeit Head and

       Neck Restraints, knowing i) that the SIMPSON Registered Marks belonged to Plaintiff

       SIMPSON and the SFI Registered Mark belonged to Plaintiff SFI; ii) that the Counterfeit

       Head and Neck Restraints were in fact counterfeit goods; and (iii) that use of the

       SIMPSON Registered Marks and/or the SFI Registered Mark on the counterfeit goods

       was unauthorized, unlicensed and unlawful.  Plaintiffs are therefore entitled to recover

       treble damages pursuant to 15 U.S.C. § 1117(a).  Furthermore, Defendants' knowing,

       intentional and/or willful conduct constitute actions that make this an exceptional case

entitling Plaintiffs to an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

83. Defendants' use of the SIMPSON Registered Marks and/or the SFI Registered Mark also constitutes the use in commerce of at least one "counterfeit mark" as defined in 15 U.S.C 1116(d)(1)(B). Plaintiffs therefore reserve the right to elect, at any time prior to final judgment being entered, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

84. The trademark infringement and counterfeiting committed by Defendants and complained of herein have caused, and will continue to cause, each Plaintiff irreparable harm and further injury unless enjoined by this Court.

### PLAINTIFFS' SECOND CAUSE OF ACTION AND CLAIM FOR RELIEF
### UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
### FALSE DESIGNATION OF ORIGIN
### FALSE OR MISLEADING ADVERTISING

85. Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth in this cause of action.

86. Defendants' acts and/or omissions as stated herein constitute unfair competition in violation of 15 U.S.C. 1125(a)(1)(A) as such acts and/or omissions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of each Defendant with each Plaintiff, and/or as to the origin, sponsorship, and/or approval of each Counterfeit Head and Neck Restraint offered for sale or sold in commerce.

87. As a proximate result of Defendants' unfair competition, including false designation of origin and/or false or misleading advertising, Plaintiffs have each been damaged in an actual amount to be proven at trial. Furthermore, upon information and belief, as a

proximate result of said unfair competition, each Defendant has unlawfully profited in an amount to be determined at trial.

88.     The unfair competition, including false designation of origin and/or false or misleading advertising, committed by each Defendant and complained of herein has caused, and will continue to cause, each Plaintiff irreparable harm and further injury unless enjoined by this Court.

## PLAINTIFFS' THIRD CAUSE OF ACTION AND CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## UNDER N.C. GEN. STAT. § 75-1.1

89.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth in this cause of action.

90.     Defendants' acts and/or omissions as stated herein constitute i) an unfair or deceptive act or practice; ii) in or affecting commerce; iii) which proximately caused injury to the Plaintiffs, and therefore, violates N.C. Gen. Stat. 75-1.1(a).

91.     As a proximate result of Defendants' unfair and deceptive trade practices, Plaintiffs have each been damaged in an actual amount to be proven at trial.  Furthermore, upon information and belief, as a proximate result of said unfair and deceptive trade practices, each Defendant has unlawfully profited in an amount to be determined at trial.

92.     In the event that a violation of N.C. Gen. Stat. 75-1.1 is found by this Court, and damages for such violation are assessed, pursuant to N.C. Gen. Stat. § 75-16 judgment shall be rendered in favor of the Plaintiffs and against the Defendants for treble the amount fixed by the verdict.

93.     In the event that a violation of N.C. Gen. Stat. 75-1.1 is found by this Court, and i) either Defendant willfully engaged in the act or practice; and ii) there was an unwarranted

refusal by either Defendant to fully resolve this matter, pursuant to N.C. Gen. Stat. § 75-16.1, the Court should award attorneys' fees to Plaintiffs, to be taxed as a part of the Court costs and payable jointly and severally by the Defendants.

94.     The unfair and deceptive trade practices committed by Defendants and complained of herein have caused, and will continue to cause, each Plaintiff irreparable harm and further injury unless enjoined by this Court.

## PLAINTIFFS' FOURTH CAUSE OF ACTION AND CLAIM FOR RELIEF PATENT INFRINGMENT

95.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth in this cause of action.

96.     Defendants' acts and/or omissions as stated herein constitute direct patent infringement in violation of 35 U.S.C. § 271(a) and/or indirect patent infringement in violation of 35 U.S.C. § 271(c).

97.     As a proximate result of Defendants' direct and/or indirect patent infringement, Plaintiffs have each been damaged in an actual amount to be proven at trial.  Furthermore, upon information and belief, as a proximate result of said direct and/or indirect patent infringement, each Defendant has unlawfully profited in an amount to be determined at trial.

98.     At all relevant times, each Defendant has been and is continuing to directly infringe and/or indirectly infringe at least one claim of each of the SIMPSON Patents.

99.     By way of example, each Defendant has been and is continuing to directly infringe and/or indirectly infringe the SIMPSON Patents by making, using, offering for sale or selling,

and/or importing into the United States head and neck restraints that are covered by at least one claim of the '669 Patent.

100.    By way of further example, each Defendant has been and is continuing to directly infringe and/or indirectly infringe the SIMPSON Patents by making, using, offering for sale or selling, and/or importing into the United States head and neck restraints that are covered by at least one claim of the '074 Patent.

101.    Defendants' infringement of the SIMPSON Patents is knowing, willful and intentional. Plaintiffs are therefore entitled to recover an award of enhanced damages up to three times compensatory damages pursuant to 35 U.S.C. § 284.  Furthermore, each Defendant's knowing, intentional and/or willful conduct constitutes actions that make this an exceptional case entitling Plaintiffs to an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

102.    The direct and/or indirect patent infringement committed by each Defendant and complained of herein have caused, and will continue to cause, each Plaintiff irreparable harm and further injury unless enjoined by this Court.

## PLAINTIFFS' FIFTH CAUSE OF ACTION AND CLAIM FOR RELIEF
## COMMON LAW FRAUD

103.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth in this cause of action.

104.    Defendants' acts and/or omissions as stated herein constitute fraud under the common laws of the State of North Carolina.

105.    As a proximate result of Defendants' acts of fraud, Plaintiffs have each been damaged in an actual amount to be proven at trial.  Furthermore, upon information and belief, as a

proximate result of said fraud, each Defendant has unlawfully profited and/or has been unjustly enriched in an amount to be determined at trial.

106.   At all relevant times, each Defendant has been and is continuing to make a false representation or concealment of a material fact, namely that head and neck restraints sold by the Defendants have been tested by Plaintiff SFI and are certified by Plaintiff SIMPSON as meeting the stringent performance and safety requirements of SFI SPEC 38.1.

107.   Defendants' false representation or concealment of a material fact is reasonably calculated to deceive consumers and is intended to deceive consumers.

108.   Defendants' false representation or concealment of a material fact have in fact deceived consumers not only as to the source of head and neck restraints sold by the Defendants, but as to the potentially unsafe nature of the goods and their ineligibility for use in certain motorsports events, such as NASCAR competitions.

109.   Defendants' false representation or concealment of a material fact has damaged the trust consumers place in the Plaintiffs as the source and/or sponsor of the head and neck restraints sold by the Defendants, and the goodwill consumers attribute to the Plaintiffs' trademarks.

110.   The common law fraud committed by each Defendant and complained of herein has caused, and will continue to cause, each Plaintiff irreparable harm and further injury unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

111.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs hereby respectfully request a trial by jury of all issues that can be properly tried by a jury.

## PLAINTIFF'S PRAYER FOR RELIEF

WHEREFORE, the Plaintiff SIMPSON and the Plaintiff SFI each pray for judgment and relief against the Defendant WAGONER and the Defendant CATHCART, and that this Court:

A.    Find that each Defendant has engaged in trademark infringement and counterfeiting against the Plaintiffs, in violation of 15 U.S.C. § 1114 et seq.;

B.    Find that each Defendant has engaged in unfair competition against the Plaintiffs in violation of 15 U.S.C. § 1125(a) et seq.;

C.    Find that each Defendant has engaged in unfair and deceptive trade practices under North Carolina State law in violation of N.C. Gen Stat. § 75-1.1 et seq.;

D.    Find that each Defendant has engaged in patent infringement against at least Plaintiff SIMPSON in violation of 35 U.S.C. § 271 et seq.;

E.    Enter judgment against each Defendant, and against the Defendants jointly and severally, in favor of Plaintiff s;

F.    Find that each Defendant's acts of trademark infringement, counterfeiting, unfair competition, unfair and deceptive trade practices and patent infringement were in all respects conducted knowingly, intentionally, willfully and for profit;

G.    Award to Plaintiffs each Defendant's profits, and the damages sustained by Plaintiffs as a result of each Defendant's infringing and counterfeiting use of the SIMPSON Registered Marks, the SIMPSON Common Law Marks and the SFI Registered Mark.  In the alternative, award statutory damages to Plaintiffs for each registered trademark infringed by counterfeiting in an amount not less than one thousand dollars ($1000) or more than two hundred thousand dollars ($200,000) for each counterfeit mark and for each type of goods sold, offered for sale or distributed as this Court deems just.  In the event the Court

finds that use of the counterfeit mark was willful, award statutory damages to Plaintiffs an amount not more than two million dollars ($2,000,000) for each counterfeit mark and for each type of goods sold, offered for sale or distributed, as this Court deems just;

H.     Award to Plaintiffs each Defendant's profits and the damages sustained by Plaintiffs because of each Defendant's acts of unfair competition under 15 U.S.C. § 1125(a);

I.     Award to Plaintiffs treble, punitive, or otherwise enhanced damages, as available and not already awarded, for each Defendant's acts of willful infringement;

J.     Award to Plaintiffs their actual damages caused by each Defendant's deceptive and unfair trade practices, trebled as mandated by N.C Gen. Stat. § 75-16, and award to Plaintiffs their attorneys' fees and court costs as permitted by N.C. Gen. Stat. § 75-16.1;

K.     Order each Defendant to surrender for inspection and destruction any and all Counterfeit Head and Neck Restraints owned by, belonging to, or in the possession of the Defendant, along with any designs, materials and/or tooling utilized for manufacturing Counterfeit Head and Neck Restraints.

L.     Grant Plaintiffs preliminary and permanent injunctive relief against further infringement, counterfeiting, unfair competition and/or false advertising of the SIMPSON Registered Marks, the SIMPSON Common Law Marks and/or the SFI Registered Mark by the Defendants;

M.     Grant Plaintiffs preliminary and permanent injunctive relief against further infringement of the SIMPSON Patents by the Defendants;

N.     Award Plaintiffs their costs of suit and attorneys' fees, to the extent not already awarded herein; and

O.     Grant Plaintiffs such other and further relief as justice may require.

Respectfully submitted before the United States District Court for the Western District of

North Carolina on this the 18<u>th</u> day of <u>February, 2015</u>.


By:     s/Gregory R. Everman
        Gregory R. Everman
        North Carolina State Bar No. 27554
        Attorney for Plaintiff *SIMPSON PERFORMANCE PRODUCTS, INC.*
        EVERMAN LAW FIRM, P.A.
        6000 Fairview Road, Suite 1200
        Charlotte, North Carolina 28210
        Tel:  704-271-9550
        Fax:  704-271-9551
        E-mail:  <u>geverman@evermanlawfirm.com</u>

        Christopher C. Dremann
        North Carolina State Bar No. 19918
        Attorney for Plaintiff *SIMPSON PERFORMANCE PRODUCTS, INC.*
        CHRISTOPHER C. DREMANN, P.C.
        11715 Ridgeway Park Drive
        Charlotte, North Carolina 28277
        Tel:  828-238-3791
        E-mail:  <u>cdremann@ccdpc.com</u>


By:     s/Christopher A. Page
        Christopher A. Page State Bar. No. 19600
        Patrick M. Aul State Bar No. 39506
        Attorneys for Plaintiff *SFI FOUNDATION, INC.*
        Young Moore and Henderson, PA
        PO Box 31627
        Raleigh, NC 27622
        Tel:  919-782-6860
        Fax:  919-782-6753
        E-mail: <u>Chris.Page@youngmoorelaw.com</u>
        E-mail: <u>Patrick.Aul@youngmoorelaw.com</u>