UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

SIMPSON PERFORMANCE )
PRODUCTS, INC., and )
SFI FOUNDATION, INC., )
 )
    Plaintiffs, )
 )
    v. ) CAUSE NO.: 2:15-CV-213-TLS
 )
ROBERT C. WAGONER and DEREK )
RANDALL CATHCART, )
 )
    Defendants. )

**OPINION AND ORDER**

    The Plaintiffs, Simpson Performance Products, Inc., and SFI Foundation, sued the Defendants, Robert C. Wagoner and Derek Randall Cathcart in the Western District of North Carolina for trademark infringement, unfair competition, unfair and deceptive trade practices, patent infringement, and common law fraud related to the sale of head and neck restraints used in automotive racing.

    Since the initiation of this lawsuit in February 2015, the Plaintiffs have sought to enjoin the Defendants from further manufacture, distribution, or sales of the alleged counterfeit products. A temporary restraining order is currently in place, which prohibits the Defendants "from selling counterfeit head and neck restraints bearing Plaintiffs' trademarks in violation of the Trademark (Lanham) Act, and from altering the status quo of inventory and records, documents and things relating to the counterfeit head and neck restraints." (Agreed TRO, ECF No. 64.) The Plaintiffs also believe that they are entitled to preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65. The parties participated in an evidentiary hearing in the Western District of North Carolina, before the case was transferred to this Court. During the

hearing, the Defendants challenged whether the court had personal jurisdiction over the Defendants. The court took the motion for injunctive relief under advisement, and considered allowing additional discovery on the jurisdictional issue. Ultimately, the court decided to transfer the case to this Court. In doing so, the court noted that "increased time needed for jurisdictional discovery and supplemental motions regarding personal jurisdiction would be better spent litigating the merits of this case" given that the harm was purportedly so great as to justify interlocutory injunctive relief. (Order 5, ECF No. 30.)

Once transferred, this Court provided the parties with an opportunity to supplement the record that had been made with respect to the motion for preliminary injunctive relief. Having now reviewed the record, including the supplemental briefing, the Court finds that the Plaintiffs are entitled to preliminary injunctive relief.

## BACKGROUND

Plaintiff SFI is a non-profit organization that was established in 1978 to issue and administer standards for the quality assurance of specialty performance products and racing equipment. NASCAR is one of the sanctioning body members of SFI that uses SFI specifications within its rulebook and SFI minimum standards of performance for safety products, such as head and neck restraints, that are required for NASCAR competitions. For example, NASCAR competitors must use head and neck restraints that are certified as being manufactured in compliance with SFI Specification 38.1 (SFI SPEC 38.1). The word and design of SFI's service mark is a federally registered trademark for use in connection with the development of voluntary standards for speciality and performance automobile and racing

2

equipment.

Plaintiff Simpson is a leading manufacturer of automotive specialty performance products such as head and neck restraints for competitive racing. The SIMPSON® Hybrid PRO Rage™ head and neck restraint is one of only a few head and neck restraints to be certified under SFI SPEC 38.1 for use in NASCAR competitions. The approved products bear a certification label featuring SFI's registered service mark and the manufacturer's certification that the product meets SFI SPEC 38.1. Simpson owns registered trademarks for the wording and design of the Simpson logo for use on or in connection with driver restraint harnesses, neck support yokes and harness pads, and webbing belts for harnesses. Simpson also owns common law trademarks HUTCHENS Hybrid PRO™ and Hybrid PRO™ for use in connection with driver restraint harnesses.

Each of the Defendants has offered head and neck restraints for sale through different internet websites. The restraints feature a Simpson federally registered trademark and common law trademark. They also bear the federally registered trademark belonging to SFI and featured on an SFI SPEC 38.1 certification label. However, the products are not genuine Simpson products, and were not manufactured by Simpson or its predecessor. The certification labels these products bear are not genuine SFI SPEC 38.1 certification labels. The Plaintiffs' inspection of the counterfeit products revealed them to be of inferior quality to a genuine Simpson product.

After the Plaintiffs discovered that counterfeit products were being offered on the internet, Trevor P. Ashline, Vice President of Engineering and Product Development for Simpson, authorized a safety Bulletin to be posted on Simpson's website. It warned that use of counterfeit products without the appropriate SFI labeling could result in serious injury or death,

as these products had not been tested by SFI and there was no way to know whether they met SFI standards. SFI posted a similar warning on its website. Simpson also notified technical officials at motorsports racing events about the existence of counterfeit HUTCHENS Hybrid PRO™ head and neck restraints, and advised motorsports competitors to present any suspect counterfeit device for inspection.

**ANALYSIS**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted). In determining whether a situation merits a preliminary injunction, a district court conducts a two-phase analysis. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). First, the threshold phase requires a party seeking the injunction to satisfy three requirements: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Id.* at 1086 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). If the moving party passes this threshold phase, the court moves to the balancing phase. *Id.*

In the balancing phase, a court must attempt to minimize the cost of potential error by "balanc[ing] the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (quotation marks and citations omitted). Specifically, the court weighs the

irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id*. In so doing, the court employs a sliding scale approach: "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Id.* (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on non parties. *Id.* Taking into account all these considerations, the district court must exercise its discretion "to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Id.* "In performing this balancing, the court bears in mind that the purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) (internal quotation marks omitted).

**A.**     **Likelihood of Success on the Merits**

The Plaintiffs can establish that they are likely to succeed on the merits by showing that their chances of prevailing are "better than negligible." *Ty, Inc.*, 237 F.3d at 897. To establish trademark infringement and counterfeiting under the Lanham Act, a plaintiff must prove that: (1) it owns a valid trademark; (2) the defendant used the trademark "in commerce" and without authorization; (3) the defendant used the trademark in connection with the sale, offering for sale, distribution or advertising of goods or services; and (4) the use of the mark is likely to confuse

consumers. 15 U.S.C. § 1114(1)(a); *see also Barbecue Marx, Inc., v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000) ("In a trademark infringement suit, the plaintiff must show that its mark is protected under the Lanham Act and that the challenged mark is likely to cause confusion among consumers.").

Simpson owns four federal trademark registrations. Simpson's rights in three of the four trademark registrations is incontestable pursuant to 15 U.S.C. § 1065. The registered marks are in good standing and there is no final decision adverse to Simpson's rights in the marks or the registrations. SFI also owns a federal registration for its mark. The SFI registered mark is in good standing with the U.S. Trademark Office and there is no final decision adverse to SFI's rights in the marks or the registration. Such registration is prima facie evidence of the registrant's "exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). Simpson is also the owner of the distinctive and protectable common law marks, which are used on or in connection with driver restraint harnesses. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) (explaining how protectable trademark is acquired through use of a mark in connection with a product).

Based on testimony presented at the evidentiary hearing, the Plaintiffs offered adequate proof that the Defendants used the Plaintiffs' trademarks in commerce. Through the internet, they offered for sale, sold, distributed, and advertised head and neck restraints bearing the trademarks that did not originate with Simpson or its predecessor. The Defendants' use was without permission, authorization, or license from the Plaintiffs. The head and neck restraints the Defendants offered for sale were falsely labeled as being certified by the manufacturer that the products meet the stringent performance and safety requirements of SFI SPEC 38.1.

Additionally, the Defendants' use of the Plaintiffs' trademarks is likely to confuse consumers as to the source, origin, sponsorship, or approval of the head and neck restraints. In determining whether a plaintiff satisfies the third element of a Lanham Act claim—that the challenged mark is likely to cause confusion among consumers—the Seventh Circuit has identified seven relevant factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *Eli Lilly & Co. v. Nat'l Answers, Inc.*, 233 F.3d 456, 461–62 (7th Cir. 2000). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr–Oliver, Inc. v. Fluid–Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996); *see also Ty, Inc.*, 237 F.3d at 898. At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *AutoZone*, 543 F.3d at 929; *G. Heileman Brewing Co., Inc. v. Anheuser–Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

Most of the factors weigh heavily in the Plaintiffs' favor. The Plaintiffs sell a specialized product to the particular segment of the population that participates in competitive automobile racing. This activity requires the use of certain safety equipment. The Plaintiff's mark is strong, having been in existence since 1959. The SIMPSON® Hybrid PRO Rage™ (formerly HUTCHENS Hybrid PRO™) head and neck restraint is one of only a few head and neck restraints to be certified under SFI SPEC 38.1 for use in NASCAR competitions. The Defendants used the exact same mark on nearly identical-looking products and offered them for sale to the

same consumers. Because the products look so strikingly similar, buyers will likely be confused and think that the Defendants' products are genuine Simpson products or are sponsored or endorsed by Simpson. That appears to have been the intent. One of the counterfeit restraints was offered for sale with the following description: "I have a lightly used Simpson Hybrid Pro for sale, [with] 2013 SFI tag and is in excellent condition." (Ex. 5 to Am. Compl., racingjunk.com advertisement, ECF No. 54-5.) According to the Plaintiffs, actual confusion occurred on at least two occasions when the buyers of head and neck restraints asked Simpson to service the products they bought online from one of the Defendants. Despite the fact that these consumers were familiar with racing products and were likely to use care in the purchase of such items, they were confused as to the origin of the products they purchased.

Thus, the Plaintiffs have satisfied the first, threshold element to obtaining a preliminary injunction by showing a reasonable likelihood of success on the merits.

**B.  No Adequate Remedy at Law, Irreparable Harm, and Balancing of Harms**

Determining what constitutes irreparable harm requires courts to consider the nature of the alleged injury, what redress a court may eventually provide, and the plaintiff's likelihood of success on the merits. *Judge v. Quinn*, 612 F.3d 537, 536 (7th Cir. 2010); *Girl Scouts of Manitou Council,* 549 F.3d at 1087; *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir. 1990). The Plaintiffs contend that they have made a strong showing of likelihood of confusion, even among sophisticated purchasers. Without preliminary relief, they believe that money will continue to be channeled away from Simpson goods, and they will lose the goodwill benefits earned through the selection and marketing of their brand. Additionally, consumers are harmed

when they purchase an inferior product. The Plaintiffs have presented evidence that the products the Defendants sold were inferior, and the Defendants have not refuted this evidence. The Plaintiffs argue that the continued sale of the Defendants' counterfeit restraints with inferior materials and processes will inevitably damage Simpson's reputation for high quality, performance, durability, and safety. Consequently, the reputation and the goodwill associated with its trademarks will be damaged to an extent greater than can be fairly compensated by money damages alone.

The Court agrees. Indeed, the law presumes that injuries arising from trademark infringement are irreparable. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *see also AM Gen. Corp.*, 311 F.3d at 805 (confirming "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law"). This is because the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)). The presumption is also founded upon the judgment that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Abbott Labs.*, 971 F.2d at 16.

Because the Plaintiffs have presented a strong likelihood of success on the merits, the net harm the injunction must prevent in order for preliminary relief to be warranted is lessened. *Ty,*

9

*Inc.*, 237 F.3d at 896. In any event, the net harm is sufficiently established. If no injunction was issued, irrevocable damage to the Plaintiffs' reputations and the goodwill associated with their trademarks would continue to accrue unabated until the Defendants' infringing activities were enjoined. By comparison, the Defendants will only be prevented from doing what they cannot do lawfully. They have not offered any argument that they will suffer harm by virtue of the preliminary injunction. If, as they claim at various points in their Answer, they have "never been involved in any way with Plaintiffs' products as alleged" (Answer ¶¶ 16, 17, 51–53, 55, 56–66), the injunction will not provide any hindrance to them, as it only applies to products bearing the Simpson registered mark, the Simpson common law mark, and the SFI registered mark.

An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469. Denying an injunction would have a potentially adverse impact on non parties. The public has an interest in not being confused or defrauded into buying counterfeit racing harnesses. According to affidavits offered by the Plaintiffs, since posting the Safety Bulletins, Simpson has received numerous telephone inquiries relating to the counterfeit head and neck restraints and has received delivery of several head and neck restraints confirmed as being counterfeit. Trademarks not only provide a means for consumers to distinguish between manufacturers and the quality of goods, but also provide incentive for manufacturers to produce quality goods, which common sense dictates should be a heightened concern when speciality safety products are involved. The presence of more counterfeit restraints in commerce if an injunction is not entered will exacerbate the efforts of motorsports officials to inspect devices suspected of being counterfeit.

Thus, the balance of hardships weighs in favor of the Plaintiffs.

C.    **Injunctive Bond**

Rule 65 conditions a preliminary injunction on payment of security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The purpose of an injunction bond is to protect the restrained party from damages that it would incur in the event that the injunction was wrongfully issued. *Ty, Inc.*, 292 F.3d at 516. The amount of the bond is left to the court's discretion. *Gateway E. Ry. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1141 (7th Cir. 1994).

The Defendants have already paid a $5,000 surety bond [ECF No. 11] . The Court finds this amount proper and does not require any additional bond.

D.    **Scope of Injunction**

Injunctions are based in equity and, thus, courts must remain flexible in weighing the appropriate relief. *Abbott Labs*, 971 F.2d at 17–18.

The Plaintiffs have submitted a proposed order for preliminary injunctive relief in which they propose that the Defendants be enjoined from manufacturing, selling, or distributing additional counterfeit devices. They also propose that the Defendants be required to turn over to a designated Simpson representative any counterfeit devices, component parts, or counterfeit labels within their possession, custody, or control, and that they use their best efforts to recover all counterfeit devices that either they or their agents have sold or distributed, and surrender them to the designated representative. The Plaintiffs further propose that the Defendants turn over a list of sales and contact information, cooperate with the Plaintiffs in contacting these individuals to alert them that the device they purchased is not authentic, and return any money

the customers paid for such products. The Plaintiffs suggest that the injunction require the Defendants to turn over to the Plaintiffs the names, addresses, and contact information for all other individuals and entities involved with the manufacture, tooling, sale, offering for sale or distribution of the counterfeit devices, and to use their best efforts to assist the Plaintiffs in locating and contacting these individuals and entities. The injunctive relief proposed by the Plaintiff would also require that the Defendants be enjoined from destroying or altering any tooling or counterfeit devices, and that they engage in expedited discovery.

The Court finds that it would be appropriate to enjoin the Defendants from manufacturing, selling, or distributing additional counterfeit devices. That has been the focus of the Plaintiffs' request for injunctive relief since they first requested it seven months ago. In addition, the injunction will prevent the destruction or alteration of counterfeit devices or tooling within the Defendants' possession, custody, or control. This relief will serve to minimize hardship to the Plaintiffs pending ultimate resolution of this lawsuit.

The Court is not inclined to grant the remainder of the requested relief. Most of this relief was first set forth in the Plaintiffs' proposed order, which was filed after the evidentiary hearing and the completion of all briefing. There is no basis to believe that the Defendants would have understood from these prior motions and proceedings that the Plaintiffs were seeking such relief. Nor is there a basis for ordering the surrender of items at this stage of the litigation, particularly given that the Defendants will not be allowed to manufacture, sell, or distribute additional devices, or to alter or destroy existing products or manufacturing tools. Finally, the Court finds that the Plaintiffs have not presented a sufficient basis to demand expedited discovery as opposed to relying on the Rules of Civil Procedure and appropriate requests to the Magistrate

Judge. Although the Plaintiffs argue that waiting for discovery in the normal course of the legal proceedings will necessarily prejudice them because any delay will provide the Defendants with time to alter, dispose, or destroy records and inventory relating to their counterfeiting activities and infringing sales, they have not established that this is reasonably likely to occur. As a second argument in support of expedited discovery, the Plaintiffs point to their obligation to take reasonable steps to notify motorsports competitors of potentially unsafe counterfeit head and neck restraints. Again, the Plaintiffs have not established why their current efforts, through the Safety Bulletin and notice to race officials and competitors at racing events, is not sufficient.

## CONCLUSION

For the reasons stated above, the Defendants' request for preliminary injunctive relief [ECF No. 2] is GRANTED. The Agreed Temporary Restraining Order [ECF No. 64] is DISSOLVED. A preliminary injunction shall issue immediately by separate order. Discovery deadlines will be set by the Magistrate Judge.

SO ORDERED on September 24, 2015.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION